UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GENERAL BOARD OF GLOBAL ) <br> MINISTRIES OF THE UNITED ) <br> METHODIST CHURCH (INC.) ) <br> d/b/a GLOBAL MINISTRIES, ) <br> ) <br> Defendant. ) <br> ) | CIVIL ACTION NO. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended ("Title VII") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of retaliation. The purpose of this action is to provide appropriate relief to Ivy Couch ("Couch"), who was adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC") alleges that Defendant General Board of Global Ministries of the United Methodist Church (Inc.) d/b/a Global Ministries ("Defendant") unlawfully terminated Couch in retaliation for complaining of unlawful employment practices in violation of Title VII.

1

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division. Venue is proper in this Court under 28 U.S.C. § 1391.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3), 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant has been a Georgia corporation doing business in the state of Georgia and the city of Atlanta and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Couch filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

7. On April 4, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. On May 14, 2019, the parties held a conciliation conference at the EEOC Atlanta District Office.

9. On May 15, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **STATEMENT OF CLAIMS**

11. Since on or about November 2017, Defendant has engaged in unlawful employment practices at its Atlanta, Georgia location, in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. 2000(e)-2(a), -3(a). Ultimately, Defendant discharged Couch in retaliation for making internal complaints of discrimination to Defendant and thereby, engaging in protected activity under Title VII.

12. Defendant is a global mission agency of The United Methodist Church, its annual conferences, missionary conferences, and local congregations.

13. Couch was employed by Defendant as a Program Area Liaison and Communications Specialist within the Mission Engagement Unit. Couch was a salaried employee.

14. There were only two Communications Specialists in the Mission Engagement Unit. One was Couch, an African-American woman, and the other was her comparator, a white female.

15. Couch's position required her to write articles for Defendant's website to bolster engagement and increase awareness about Defendant's ministry efforts. Essentially, Couch was a reporter for Defendant's written global content, for both Defendant's website and several social media platforms.

16. When Couch was hired, she and her comparator were supervised by a white female manager. The manager reported directly to the Executive Director.

17. During Couch's employment, the white female manager subjected her to unfair treatment based on her race.

18. After making multiple verbal complaints to management, Couch filed an internal written complaint with Human Resources.

19. After an investigation, the manager was discharged.

20. However, shortly thereafter, the Executive Director rehired the manager and assigned the manager to a different department.

21. In December 2017, the Executive Director became Couch's temporary supervisor.

22. After the Executive Director became Couch's supervisor, he began treating her less favorably than her white comparator.

23. The Executive Director demonstrated a pattern of antagonism toward Couch, including but not limited to making disparaging comments to Couch, removing many of her job duties, decreasing her professional opportunities by limiting her assignments, and even removing her previously published articles from the company's website.

24. In March 2018, the Executive Director hired another white female to be the supervisor for Couch and her comparator. However, the Executive Director maintained control of Couch's department and exercised authority over Couch.

25. On or about April 20, 2018, Couch met with the Director of Human Resources and complained that she was being unfairly targeted by the Executive Director.

26. Human Resources encouraged her to draft a letter to the Executive Director detailing her concerns of retaliatory treatment. Couch wrote the letter on or about April 25, 2018.

27. During the first week in May 2018, Couch met Human Resources to complain that she was being subjected to retaliation by the Executive Director.

28. Not only did the Executive Director take retaliatory actions that directly affected Couch's ability to perform her job duties, but he demonstrated an animus toward her by making inappropriate comments concerning her infant child.

29. On or about May 14, 2018, Couch formally filed an internal complaint of discrimination and retaliation against the Executive Director.

30. The Executive Director had knowledge of Couch's verbal complaints to Human Resources and written grievances concerning discriminatory and retaliatory treatment.

31. On or about June 1, 2018, Defendant terminated Couch's employment.

32. Respondent told Couch that she was being discharged due to a departmental reorganization.

33. After Couch was discharged, Respondent posted an online job advertisement for her position.

34. Couch was subjected to discrimination and retaliation because she engaged in protected activity.

35. The effect of the practices complained of above has been to deprive Couch of equal employment opportunities and otherwise adversely affect her status as an employee for engaging in protected activity.

36. The unlawful employment practices complained of above were intentional.

37. The unlawful employment practices complained of above were done with malice or with reckless indifference to Couch's federally-protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against and discharging employees for engaging in protected activity by complaining about unlawful employment practices, and/or otherwise engaging in any other employment practices which discriminate against employees because they engaged in protected activity;

  B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees who engage in protected activity and which eradicate the effects of its past and present unlawful employment practices;

  C. Order Defendant to make Couch whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement;

  D. Order Defendant to make Couch whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

  E. Order Defendant to make Couch whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  F. Order Defendant to pay Couch punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

G. Grant such further relief as the Court deems necessary and proper in the public interest; and

H. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully Submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

*s/ Pamela E. Palmer*
Trial Attorney
Georgia Bar No. 882599
pamela.palmer@eeoc.gov

U.S. Equal Employment Opportunity Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
(404) 562-6973 (direct dial)
(404) 562-6905 (facsimile)